UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARLENE HUERTAZ,<br><br>              Plaintiff,<br><br>      v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,[1]<br><br>              Defendant. | Case No.  1:21-cv-00515-ADA-BAM<br><br>**FINDINGS AND RECOMMENDATIONS REGARDING SOCIAL SECURITY COMPLAINT**<br><br>(Doc. 18)<br><br>FOURTEEN-DAY DEADLINE |

**Findings and Recommendations**

**INTRODUCTION**

Plaintiff Darlene Huertaz ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe for issuance of findings and recommendations.

---

[1]   Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

1

Having considered the briefing and record in this matter, the Court finds that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court will recommend denying Plaintiff's appeal and affirming the agency's determination to deny benefits.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff filed an application for supplemental security income on August 3, 2017. AR 19, 249-51.[2] Plaintiff alleged that she became disabled on November 30, 2015, due to a lower back injury, degenerative discs in the lower back, and a pinched nerve in the lower back. AR 235. Plaintiff's application was denied initially and on reconsideration. AR 87-90, 96-101. Subsequently, Plaintiff requested a hearing before an ALJ. Following a hearing, ALJ Kathleen Laub issued an order denying benefits on December 26, 2019. AR 16-35, 40-62. Thereafter, Plaintiff sought review of the decision, which the Appeals Counsel denied, making ALJ Laub's decision the Commissioner's final decision. AR 5-9. This appeal followed.

### Hearing Testimony

ALJ Laub held a video hearing on November 19, 2019. Plaintiff appeared in Fresno, California, with her attorney, Amanda Foss. Cyndee Burnett, an impartial vocational expert, also appeared and testified. AR 19, 42.

In response to questions from the ALJ, Plaintiff testified that she had completed the tenth grade and received a GED. She also received a medical assistant diploma. Plaintiff's past work included various picking and packing jobs. Plaintiff felt that she was unable to work because of her lower back. AR 44-46.

Between November 30, 2015, and December 31, 2017, the relevant period, Plaintiff took medication for pain, which helped. She also underwent injections, which helped for a couple of weeks. During that time, she lived with her husband. She would walk about 20 feet to stretch, and used a cane, which was not prescribed. AR 46-49.

---

[2]  References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

Plaintiff also testified that she had problems with depression during the period at issue. She received medication for it in late 2017. She also saw a counselor twice in either 2017 or 2018. AR 49-50. Additionally, she had problems with her left shoulder. AR 50.

When asked about a typical day during the relevant period, Plaintiff testified that she would prepare meals, wash dishes, do laundry, and mop. She would go to the grocery store with her husband. She did not drive. After standing for about 15 minutes during the day, she would have to sit down for 15 or 20 minutes at a time. AR 50-53.

In response to questions from her attorney, Plaintiff testified that her pain or medication make it difficult for her to focus and concentrate. She has memory issues. She sometimes has to lie down in a fetal position because her lower back is tight. The chiropractor talked about surgery for her lower back, but she is scared to do it. AR 53-54.

Following Plaintiff's testimony, the ALJ elicited testimony from the VE. The VE characterized Plaintiff's past work as picker, packer. AR 56- 57. The ALJ then asked the VE hypothetical questions. For the first hypothetical, the ALJ asked the VE to assume an individual of the same age, education, and past work experience as Plaintiff. This individual could work at a light exertional level with the following additional limitations: sit, stand, and/or walk for one hour at a time, sit for eight hours total, and stand and/or walk for six hours total an eight-hour workday. This individual could never climb ladders, ropes, or scaffolds, but could occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl. This individual could never reach overhead with the left upper extremity and could tolerate occasional exposure to extreme cold and humidity. The VE testified that Plaintiff's past work would be eliminated, but this individual could perform other work in the national economy, such as merchandise marker, mailroom clerk, and package sorter. AR 57-58.

For the next hypothetical, the ALJ asked the VE to assume an individual of the same age, education, and past work experience as Plaintiff and the same limitations as hypothetical one. This individual also either needed to be able to alternate positions or stand up and stretch every 30 minutes. She would not be off task while making positional changes or stretching. The VE testified that the jobs would not be affected with a standing and walking alternation. If the individual needed to sit for five minutes, then the jobs would be reduced by 50%. AR 58-59.

3

For the third hypothetical, the ALJ asked the VE to assume an individual of the same age, education, and past work experience as Plaintiff. This individual could sit for 15 minutes one time, stand for 5 minutes at one time, and could sit, stand, and/or walk for less than two hours total in an eight-hour workday. This individual also required a cane with which to ambulate or stand and could occasionally lift and carry less than ten pounds. This individual could rarely climb stairs, defined as 1 to 5% of an eight-hour workday. This individual could never twist, stoop, crouch, or climb ladders. This individual could handle with the bilateral upper extremities for 70% of an eight-hour workday, could finger with the bilateral upper extremities for 80% of a workday, could reach in front of the body for 20% of an eight-hour workday and could never reach overhead with the bilateral upper extremities. This individual also was incapable of low stress work and would be off task 25% or more of an eight-hour workday and would be absent from work more than four days per month. The VE testified that all work would be eliminated. AR 59-60.

The VE confirmed that information regarding positional changes, reaching, use of a cane, and off task and absenteeism tolerances were based on her knowledge of how the jobs are performed and industry standards through job analysis. AR 60.

In response to a question from Plaintiff's counsel, the VE testified that all employment would be eliminated if an individual would likely miss two days a month unscheduled consistently. AR 61.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act through December 31, 2017, the date last insured. AR 19-35. Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of November 30, 2015, through her date last insured of December 31, 2017. AR 21. The ALJ identified the following severe impairments: left rotator cuff tendonitis with possible tear, degenerative disc disease of the lumbar spine, and chronic cervical and lumbosacral musculoligamentous strain/sprain. AR 21-24. The ALJ

determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments, specifically considering listings 1.02 for major dysfunction of a joint due to any cause and 1.04 for disorders of the spine. AR 24-25.

Based on a review of the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work, except she could sit, stand, or walk for one hour at a time. She could sit for a total of eight hours and could stand and/or walk for a total of six hours during an eight-hour workday. She could never climb ladders, ropes, or scaffolds. She could occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl. She could never reach overhead with the left upper extremity. She could tolerate occasional exposure to extreme cold and humidity. AR 25-34. With this RFC, the ALJ found that Plaintiff could not perform any past relevant work, but that there were jobs in the national economy that Plaintiff could have performed, such as merchandise marker, mailroom clerk, and package sorter. AR 33-35. The ALJ therefore concluded that Plaintiff had not been under a disability at any time from November 30, 2015, the alleged onset date, through December 31, 2017, the date last insured. AR 35.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.,* *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards,

and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## DISCUSSION[3]

Plaintiff contends that the ALJ erred by finding the opinions from treating physician, Dr. Peter J. Mandell, and examining physician, Dr. Daria Majzoubi, not persuasive. Plaintiff also contends that the ALJ failed to include work-related limitations in the RFC consistent with the nature and intensity of her limitations and failed to offer clear and convincing reasons to reject Plaintiff's subjective complaints. (Doc. 18 at 1.)

**A. Evaluation of Medical Opinions**

Plaintiff argues that the ALJ erred in her evaluation of the opinions of Drs. Mandell and Majzoubi and did not properly consider the supportability and consistency of those opinions. (Doc. 18 at 11.)

**1. Legal Standard**

Because Plaintiff applied for benefits after March 27, 2017, her claim is governed by the agency's new regulations concerning how an ALJ must evaluate medical opinions. 20 C.F.R. §

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

404.1520c  Under the new regulations, the Commissioner does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). The Commissioner evaluates the persuasiveness of the medical opinions based on the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c)(1)-(5).  Supportability and consistency are the most important factors.  20 C.F.R. § 404.1520c(b)(2).

Ninth Circuit case law preceding the new regulations afforded deference to the medical opinions of treating and examining physicians.  Indeed, prior to the current regulations, the Ninth Circuit required ALJs to provide clear and convincing or specific and legitimate reasons for rejecting the medical opinions of treating or examining physicians.  These standards of articulation no longer apply in light of the new regulations, and the ALJ is not required to provide "specific and legitimate reasons" to discount the medical opinions. *See Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (finding revised social security regulations "clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant").  The Ninth Circuit has clarified that "under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Id.* "The agency must 'articulate ... how persuasive' it finds 'all of the medical opinions' from each doctor or other source, . . . and 'explain how [it] considered the supportability and consistency factors' in reaching these findings." *Id.* (internal citations omitted).

    **2.**    **Analysis**

Dr. Mandell

Dr. Mandell conducted a Worker's Compensation exam of Plaintiff on April 22, 2016.  AR 329-36.  Plaintiff informed Dr. Mandell that she injured herself on May 4, 2015, while moving totes, but she did not report the injury.  AR 329-30.  On physical examination, Plaintiff had no tenderness of

the cervical, thoracic, or lumbar spines, or paraspinous musculature and had no tenderness about the sternocleidomastoids, trapezii, rhomboids, sacroiliac joints, or sacrosciatic notches. She had reduced active motion of the cervical and lumbar spine. AR 332-33. Her straight leg testing measured 80/80 degrees bilaterally in the seated position and 45/30 degrees (R/L) in the recumbent position. She walked with a mild limp. Her deep tendon reflexes were equal and active. She had a collapsing-type weakness of both upper extremities and a fluttering-type weakness of both extensor hallucis longus muscles. Her sensory examination was normal. AR 334.

Dr. Mandell opined that for her cervical spine Plaintiff had a 6% whole person impairment and would need treatment for the neck in the form of pain management, including injections, medications, and physical therapy for flare-ups. AR 335. For her lumbar spine, Dr. Mandell opined that Plaintiff had a 12% whole person impairment and would need treatment in the form of injections, medications and physical therapy for flare-ups. AR 335. Dr. Mandell opined that Plaintiff could not return to her former job and was precluded from lifting more than 10 pounds or so, standing for more than 15 minutes or so, sitting for more than 30 minutes or so, and from repetitive stooping and bending. AR 335.

The ALJ found the medical opinion of Dr. Mandell not persuasive, and reasoned as follows:

> He restricted the claimant to a limited range of sedentary work that involved no more than 15-minutes of standing or 30-minutes of sitting per occasion and no repetitive stooping or bending. While some of the abnormalities, including decreased range of motion and muscle strength, detailed in Dr. Mandell's examination findings support some physical limitations, [t]he normal reflexes, sensation, and absence of tenderness throughout the claimant's spinal region do not support such restrictive limitations. Furthermore, Dr. Mandell's medical opinion is not consistent with the claimant's very conservative medical treatment, the recurring decreases in reported pain levels, and the totality of the evidence of record.

AR 32.

Plaintiff argues that in assessing the supportability of Dr. Mandell's opinion, the ALJ "simply summarized benign mental status findings" but failed to support that the normal findings "effectively 'cancel out' the impact of Plaintiff's severe mental status abnormalities." (Doc. 18 at 12.) Plaintiff's argument misses the mark and lacks support. The ALJ did not rely on "benign *mental* status findings" in assessing the supportability of Dr. Mandell's opinion. Rather, the ALJ relied on the normal

8

*physical* findings from Dr. Mandell's examination, such as normal reflexes and sensation, along with the absence of tenderness throughout Plaintiff's spinal region. AR 32, 332-34. The ALJ determined that those normal physical findings did not support Dr. Mandell's more restrictive limitations. This determination properly invoked the supportability factor, which means the extent to which a medical source supports the medical opinion by explaining the "relevant ... objective medical evidence." *Id.* § 404.1520c(c)(1))." *Woods*, 2022 WL 1195334, at * 6.

Insofar as Plaintiff cites *Johnson v. Berryhill*, No. C17-5623-MAT, 2018 WL 3008879, at *4 (W.D. Wash. June 15, 2018) and *William B. v. Saul*, No. 2:19-CV-00261-JTR, 2020 WL 4318755, at *3 (E.D. Wash. July 27, 2020), to support the proposition that a physician's normal findings on examination do not negate other abnormal findings, this citation is not persuasive. (Doc. 18 at 12.) The cited cases are not controlling precedent in this district. Moreover, the cited cases are distinguishable as they relate to mental status examinations, not physical examinations. *See Johnson*, 2018 WL 3008879, at *4 (W.D. Wash. June 15, 2018) ("Furthermore, the ALJ did not acknowledge the extent to which Dr. Wingate's mental status examination ("MSE") revealed abnormal findings; the existence of other normal findings does not negate Dr. Wingate's examination."); *William B.*, 2020 WL 4318755, at *3 ("Simply because Plaintiff did well on portions of the mental status exam does not negate the other abnormal findings, as well as Dr. Islam-Zwart's professional assessments.").

Plaintiff next argues that with respect to consistency, the ALJ's assertion that Dr. Mandell's opinion is inconsistent with Plaintiff's conservative treatment is "disingenuous." (*Id.* at 12-13.) Plaintiff contends that her treatment history reveals that she underwent aggressive care, including trigger point injections on multiple occasions in addition to treatment with narcotic pain medications. Plaintiff asserts that the ALJ's characterization of this treatment as conservative is erroneous. (*Id.* at 13.)

The record reflects that Plaintiff was prescribed narcotic pain medications and underwent steroid injections. AR 398-99, 404-05, 513, 667, 672, 675, 836, 852. However, courts have found that the fact that a plaintiff has been prescribed narcotic medication or received injections does not negate the reasonableness of an ALJ's finding that Plaintiff's treatment as a whole was conservative, particularly when undertaken in addition to other, less invasive treatment methods. *See Martin v.*

9

*Colvin*, No. 1:15-cv-01678-SKO, 2017 WL 615196, at *10 (E.D. Cal. Feb. 14, 2017) (collecting cases); *see also Schilling v. Comm'r of Soc. Sec*., No. 1:21-CV-01268-SAB, 2022 WL 17418343, at *10 (E.D. Cal. Dec. 5, 2022).

Here, the ALJ appropriately identified other, less invasive treatment. For example, the ALJ noted that despite Plaintiff's report that she injured her lumbar spine in May 2015, while lifting a tote at work, she did not obtain immediate treatment and she continued to work until November 2015. AR 26-27. The ALJ also noted that Plaintiff initially was being treated conservatively by her primary care provider, and this treatment included the use of medication and physical therapy/chiropractic treatment. AR 27, 399. 402, 405, 407, 409, 411, 413. Thereafter, Plaintiff underwent several months of chiropractic treatment with Paul Schroeder, DC, beginning in November 2015 and continuing through at least July 2016. AR 27. AR 346-49, 354-57, 362-66, 370-73, 377-80, 389-93,416-20, 424-26, 430-33, 439-43. Plaintiff then transitioned her care to Dr. Daria Majzoubi in September 2016 and was treating her pain only with ibuprofen at that time. AR 29, 680. By October 2017, Plaintiff was managing her pain with medication, with a reported pain level of 0. AR 30, 660. These conservative treatment options appear to support the ALJ's finding that Plaintiff's overall treatment plan was conservative in nature during the relevant period. *Schilling*, 2022 WL 17418343, at *10. The Court finds the ALJ's characterization of Plaintiff's treatment on the whole as conservative was not unreasonable, where her treatment history consisted largely of medications and chiropractic care. *Id.*

Plaintiff further contends that the ALJ's assertion that the symptoms were managed with treatment "is a misstatement of the record" because records show that Plaintiff's reported improvement was as little as 20% relief from pain and any relief was temporary. (Doc. 18 at 13.) The Court does not find that the ALJ misstated the record.

In this case, the ALJ noted that by March 2016, with regular chiropractic treatment, Plaintiff felt better and no longer needed to take anti-inflammatory medication. AR 27-28, 362. Her chiropractor also documented and confirmed "significant functional improvements" resulting from Plaintiff's prior chiropractic treatment, and Plaintiff herself reported that her pain was 25% less following the prior treatment. AR 364. Further, the ALJ also noted that in May 2016, Plaintiff reported that her previous chiropractic treatment "reduced her pain by 50%" and "her pain went down

to a 4/10 immediately and stayed that way for several weeks.  Significant relief was provided by chiropractic treatment on the last treatment." AR 348.

After stopping chiropractic treatment in or around July 2016, and transitioning to treatment with Dr. Majzoubi in September 2016, Plaintiff reported her pain as 10/10.  However, as indicated by the ALJ, Dr. Majzoubi's subsequent treatment records reflected an overall reduction in Plaintiff's pain levels with treatment.  AR 29-30, 659-80.  Indeed, following steroid injections on January 6, 2017, Plaintiff's pain level was noted to be 0 out of 10 through the end of March 2017, with Dr. Majzoubi indicating that Plaintiff's pain was much improved.  AR 29, 669, 670, 671, 672.  After steroid injections in May 2017, Plaintiff again reported a reduction of pain.  AR 29, 666.   By October 2017, shortly before her date last insured, Plaintiff was managing her pain with medication and reported a pain level of 0.  AR 30, 660.  Plaintiff's final examinations with Dr. Majzoubi, prior to her date last insured, included no pain ratings.  AR 30, 659, 872.

The ALJ's determination that Plaintiff's symptoms were managed with treatment was not unreasonable.  To the extent Plaintiff suggests an alternative interpretation of the evidence, this is not sufficient to establish reversible error.  If the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020), citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Dr. Majzoubi

On November 21, 2017, Dr. Majzoubi completed a Physical Medical Source Statement form. Dr. Majzoubi opined that Plaintiff could walk one city block without rest or severe pain.  Plaintiff could sit for 15 minutes at one time, could stand for 15 minutes at one time, could sit less than 2 hours in an 8-hour workday and could stand/walk less than 2 hours in an 8-hour workday.  AR 714.  Dr. Majzoubi further opined that Plaintiff must use a cane or other hand-held assistive device while standing/walking due to imbalance and pain.  Plaintiff could occasionally lift and carry less than 10 pounds, could rarely climb stairs, and could never twist, stoop (bend), crouch/squat or climb ladders. AR 715.  Dr. Majzoubi reported that Plaintiff had significant limitations with reaching, handling or fingering.  She could grasp, turn or twist objects 70% of an 8-hourworkday with her bilateral hands, could engage in fine finger manipulations 80% of an 8-hour workday with her bilateral fingers, could

1 reach in front of her body 20% of an 8-hour workday with her bilateral arms, and could reach

2 overhead 0% of an 8-hour workday with her bilateral arms. Dr. Majzoubi opined that Plaintiff would

3 be off task 25% or more of a typical workday, she was incapable of even "low stress" work, and she

4 would likely be absent from work more than four days per month. AR 716. Plaintiff also would need

5 to take unscheduled breaks during a working day more than 30 times (every 15 minutes) for 15

6 minutes at a time. AR 717.

The ALJ found the medical opinion of Dr. Majzoubi not persuasive, reasoning as follows:

> Dr. Majzoubi's opinion that the claimant is limited to a combined total of four hours of sitting and standing and/or walking during an eight-hour workday is not supported by his treatment notes that generally only address muscle spasms and document very limited objective abnormalities. Moreover, his opinion is not consistent with the claimant's conservative treatment and general ability to manage her symptoms with the use of medication.

AR 32.

In challenging the ALJ's findings, Plaintiff argues that "the ALJ failed to explain how the objective findings contradict this opinion, Plaintiff's treatment was not conservative, and it was not well managed with medication as relief was only partial and temporary." (Doc. 18 at 13-14.)

For the same reasons discussed above in connection with Dr. Mandell's opinions, the ALJ's determinations that Plaintiff's treatment generally was conservative and that her symptoms were managed with treatment were not unreasonable, and the Court does not find error. As to Plaintiff's assertions regarding the objective findings, the ALJ explained that Dr. Majzoubi's treatment notes identified only muscle spasms and documented limited objective abnormalities, which would not support a limitation to a combined total of four hours of sitting and standing and/or walking during an eight-hour workday. AR 32, 659-60, 663-64, 668, 670-71, 673-74, 676, 678-80. Plaintiff does not specifically identify any objective findings that the ALJ failed to consider or that would otherwise suggest error. (Doc. 18 at 13-14.)

Based on the above, the Court finds that the ALJ did not err in her evaluation of the opinions of Drs. Mandell and Majzoubi.

///

///

### B. Plaintiff's Subjective Complaints

Plaintiff argues that the ALJ failed to provide clear and convincing reasons to reject her subjective complaints.

In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (2004). First, the claimant must produce objective medical evidence of her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. *Id.* at 1015.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but discounted her statements concerning the intensity, persistence and limiting effects of those symptoms. AR 26. The ALJ was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.

The Court finds that the ALJ provided clear and convincing reasons to discount Plaintiff's subjective complaints. First, the ALJ found that Plaintiff's statements regarding her symptoms were inconsistent with the conservative nature of her treatment. AR 26. An ALJ is permitted to consider evidence of conservative treatment in evaluating a claimant's subjective complaints. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (finding evidence of conservative treatment sufficient to discount claimant's testimony regarding severity of impairment). As discussed above, the ALJ's determination that Plaintiff's impairments were treated conservatively was reasonable and supported by substantial evidence in the record.

Second, the ALJ found that Plaintiff's statements regarding her symptoms were inconsistent with the limited objective findings. AR 26. Although lack of supporting medical evidence cannot form the sole basis for discounting testimony, it is a factor that the ALJ can consider. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). As an example, and discussed above, the ALJ properly identified that Dr. Majzoubi's treatment records reflected only muscle spasms and limited objective findings.

Third, the ALJ properly considered Plaintiff's inconsistent statements regarding her symptoms and limitations. AR 26. An ALJ may properly consider inconsistent statements by a claimant in evaluating the claimant's testimony. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001); *see also Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1225 (9th Cir. 2010). To illustrate these inconsistencies, the ALJ considered that Plaintiff's reports to medical providers suggested greater functional abilities than those described by the claimant throughout the disability process. AR 26. The ALJ cited Plaintiff's Pain Questionnaire and her Function Report – Adult, in which she reported that she was unable to prepare meals or perform any household chores and she spent most of her days alone, isolated in her room. AR 26, 252-54, 279-86. In contrast, the ALJ referenced Plaintiff's report to the consultative examiner in September 2017 that she was able to complete household chores in the apartment where she lived with her husband and four-month-old child. AR 31, 652 (daily activities included cooking, vacuuming, mopping, taking out the trash, doing laundry and doing dishes). The ALJ also contrasted Plaintiff's questionnaire and function report with Plaintiff's hearing testimony that she could complete some household chores, such as preparing meals, washing dishes, doing laundry, and grocery shopping with her husband. AR 26, 51-52.

Similarly, the ALJ considered Plaintiff's inconsistent statements regarding the efficacy of her chiropractic treatment. AR 26. For instance, the ALJ contrasted Plaintiff's assertion that her chiropractic treatment did not help her chronic pain with her report of symptom improvement just prior to her suspension of chiropractic treatment. AR 28 ("The report of symptom improvement just prior to the claimant's suspension of chiropractic care seems to conflict with the claimant's allegations that her chiropractic treatment did not help her chronic pain."). In particular, the ALJ cited Plaintiff's report to her chiropractor in March 2016 that she had run out of anti-inflammatory medication but did not need a refill as she was feeling better. AR 28, 362. The ALJ also cited Plaintiff's statements to her chiropractor in May 2016 that her previous chiropractic treatment "immediately reduced her pain by 50%" and "her pain went down to 4/10 immediately and stayed that way for several weeks." AR 28, 348. Additionally, the ALJ found that these reports to her treating chiropractor regarding the effectiveness of her treatment varied significantly from statements she made during her evaluation with Dr. Mandell in April 2016. AR 28. In particular, the ALJ noted that Plaintiff "informed Dr.

Mandell that her chiropractic treatment was not working, which seems to conflict with her reports to her chiropractor." AR 28, 330 ("the treatments aren't helping, she informs me").

Based on the above, the Court finds that the ALJ did not err in her evaluation of Plaintiff's subjective complaints. However, even if one of the reasons for discounting Plaintiff's subjective complaints was invalid, any such error is harmless because the ALJ provided other valid reasons for discounting Plaintiff's subjective testimony. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161-63 (9th Cir. 2008) (finding that two invalid reasons to reject a claimant's testimony were harmless error where the ALJ articulated two other reasons supported by substantial evidence in the record); *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("several of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record").

## **CONCLUSION AND RECOMMENDATION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, IT IS HEREBY RECOMMENDED as follows:

1. Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be denied; and
2. The Clerk of this Court be directed to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff Darlene Huertaz.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.

*Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **December 14, 2022**                    /s/ *Barbara A. McAuliffe*
                                                              UNITED STATES MAGISTRATE JUDGE